UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ALINA VITALI,

    Plaintiff,

v.                                                                                          Case No: 8:19-cv-2593-T-36JSS

RITA KRUSE, TALI ARVIV, SUNNY MOROZ, ARVIV MEDICAL AESTHETICS, PLLC, MIDTOWN MIAMI MEDSPA, PLLC and ELECTROLYSIS INSTITUTE OF TAMPA, INC.,

    Defendants.

## ORDER

This matter comes before the Court on the Motions to Dismiss Plaintiff's Amended Complaint [Docs. 18, 21] and the Responses in Opposition [Docs. 22, 23]. The Amended Complaint raises one claim of federal securities law violation and eight state law claims arising from a contractual arrangement between Plaintiff and Defendant Rita Kruse. [Doc. 14]. Defendants have argued, among other things, that Plaintiff has not sufficiently pleaded a claim for federal securities law violation, and that the Court should decline jurisdiction over the remaining claims. Having reviewed the motions and responses and taken further argument at hearing, the Court will **GRANT** the motions to dismiss.

    **I.**    **BACKGROUND[1]**

---

[1] The following statement of facts is derived from the Plaintiff's Amended Complaint [Doc. 14], the allegations of which the Court must accept as true in ruling on the instant Motion to Dismiss. *Linder v. Portocarrero,* 963 F.2d 332, 334 (11th Cir. 1992); *Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp. S.A.,* 711 F.2d 989, 994 (11th Cir. 1983)

The Amended Complaint paints a picture of deceit and dishonest conduct by Defendants. According to Plaintiff, this all began while she was visiting Arviv Medical Aesthetics, PLLC—which was owned by Kruse's daughter—for medical services. [Doc. 14 ¶ 20]. She was approached by Kruse with a business pitch. *Id.* ¶¶ 20-23. Kruse solicited Plaintiff to make a monetary investment in return for an ownership interest in a beauty school. *Id.* ¶¶ 20, 23. Kruse allegedly represented that she had expertise in securing the required educational licensing and significant experience in operating a beauty school and would perform management services in the future on behalf of the beauty school. *Id.* ¶¶ 21, 22.

Subsequently, Plaintiff—along with her husband—met with Kruse to discuss details regarding investing funds to start the beauty school. *Id.* ¶ 24. As consideration for Plaintiff's investment of money, Kruse promised that Plaintiff would receive eighty percent of the profits derived from the beauty school and that she would not draw a salary until after the Company had sufficient revenues to generate a profit and after Plaintiff's capital contributions were repaid. *Id.* ¶¶ 25, 26. The parties met regularly after this to iron out the details. *Id.* ¶ 26.

Eventually, on May 25, 2017, the beauty school was incorporated with the Florida Department of State as Miami School of Wellness and Aesthetics, LLC. ("the Company"). *Id.* ¶¶ 29, 30; Doc. 14-1 at pp. 2-4. The Articles of Organization, which are attached to the Amended Complaint, listed Plaintiff as both the initial manager and initial registered agent of the Company. [Doc. 14-1 at pp. 3, 4]. The Term Sheet, executed on June 19, 2017, memorialized the 80-20% split between Plaintiff and Kruse, and listed both as managers. *Id.* at p. 6; Doc. 14 ¶ 40. Additionally, both Kruse and Arviv were listed as officers of the Company, Kruse as Director of Education and Arviv as Clinical Director. [Doc. 14-1 at p. 6].

Plaintiff alleges that her investment was not based on a desire to manage the Company as she lacked the unique experience and skills that were required for doing so. [Doc. 14 ¶¶ 32, 33]. Instead, she relied upon Kruse's representation that she would manage the day-to-day operations of the Company and she invested based on Kruse's representations regarding her expertise and skills in running a beauty school. *Id.* ¶¶ 34, 35. Plaintiff's contribution was primarily in the form of a capital contribution of cash and she was not expected to be active in the management of the Company. *Id.* ¶ 38, 39.

Plaintiff alleges that on June 24, 2017, she provided $26,010 to Kruse—upon Kruse's request—to pay the Company's application fee with the Florida Department of Education. [Doc. 14 ¶ 43; Doc. 14-1 at p. 10.]. Kruse withdrew $3,200 from the Company bank account on November 30, 2017 and remitted $3,100 as the application fee to the Florida Department of Education for the Company's educational license. [Doc. 14 ¶ 44; Doc. 14-1 pp. at 12-13]. However, Kruse allegedly also made several unauthorized withdrawals from the Company's account. [Doc. 14 ¶ 47]. Based on attachments to the Amended Complaint, this included withdrawals of $6,000 on September 21, 2017, $15,944.01 on November 29, and $23,075.68 on April 19, 2018. [Doc. 14-1 at pp. 33-35].[2] According to Plaintiff, Kruse used Arviv's and Moroz's businesses as conduits to make unauthorized purchases, including remodeling and buying new equipment for Moroz's beauty school—Electrolysis Institute—and buying new equipment for Arviv's Miami Medspa. [Doc. 14 ¶¶ 47-52]. Arviv's and Moroz's businesses offered similar goods and services as the Company. *Id.* ¶ 54. Kruse also allegedly paid Moroz's employee Deisy Oropsesa and made personal purchases—including hotel charges during her vacation—with the

---

[2] Notably, this exceeds the $26,010 that Plaintiff alleges she provided to Kruse. The source of the additional funds is not alleged.

monetary contribution provided by Plaintiff. *Id.* ¶¶ 48, 55; Doc. 14-1 at p. 37. In addition, Kruse purchased used furniture for the Company using Plaintiff's monetary contributions but presented Plaintiff with furniture receipts that did not match the items purchased for the Company. [Doc. 14 at ¶ 53]. She also unilaterally filed the Company's tax return and wrote off $26,010 as her own salary. *Id.* ¶ 57.

That was apparently the proverbial "last straw." Plaintiff then removed Kruse from the Company bank account and from the Company registration records with the Florida Secretary of State Division of Corporations, and immediately withdrew the Company's application with the Florida Department of Education citing a change of ownership. *Id.* ¶¶ 58-60. Subsequently, by correspondence dated May 14, 2018, Kruse's counsel presented Vitali with an offer to buy Plaintiff's ownership interest or sell Kruse's interest. *Id.* ¶ 61; Doc. 14-1 at pp. 39-40. The letter stated as follows:

> Our client has informed us that the owners of the Company are at irreconcilable impasse over the Company's management and strongly disagree over the operating and business terms of the joint venture. We summarize our client's position below.
>
> . . .
>
> You promised Ms. Kruse that she would be in charge of building up the beauty school from the ground level. In fact, the Term Sheet provided that Ms. Kruse would be the Company's Director of Education. In reliance on that promise, Ms. Kruse devoted substantial efforts to building the school. However, you have persistently and systematically forced Ms. Kruse out of the school in breach of the agreement between you and Ms. Kruse.
>
> Furthermore, the Term Sheet provided that Ms. Kruse would be a manager of the Company along with you. Yet when you signed and filed the Company's Articles of Organization with the state of Florida on May 25, 2017, you named yourself as the sole manager. On April 2, 2018. you signed and filed the Company's Annual Report where you named yourself as manager of the Company and Ms. Kruse as an authorized representative. Twenty-two days later,

> on April 24, 2018, you amended the annual report solely to remove Ms. Kruse as an authorized representative and leave yourself as the sole person with apparent authority to bind the Company. Recently, you repeatedly ignored Ms. Kruse's communications to you regarding the Company and school.

*Id.*

Plaintiff filed this action against Defendants on October 21, 2019. [Doc. 1]. The Amended Complaint presents the court with nine claims, eight of which are grounded in state law. **Counts I and II** allege breach of contract against Kruse and Arviv respectively, arising from—among other things—Kruse's unauthorized use of Company funds for expenses unrelated to the Company. [Doc. 14 at pp. 8-9]. **Counts III and IV** allege that Kruse and Arviv, respectively, breached their fiduciary duties of loyalty and care as officers of the Company[3] by engaging in self-serving transactions and misappropriation of Plaintiff's monetary investment. *Id.* at pp. 9-11. In **Count V**, Plaintiff alleges that Defendants, collectively, have been unjustly enriched by Kruse's repeated misappropriation of Plaintiff's monetary contributions and Arviv's and Moroz's purchase of equipment and furniture for their respective businesses. *Id.* at pp. 11-12. Plaintiff alleges in **Count VI** that Kruse fraudulently induced her to invest in the Company by falsely representing her ability to and interest in operating the Company. *Id.* at pp. 12-13. Similarly, Plaintiff alleges in **Count VII** that collectively, Defendants conspired to induce her to invest in the Company, all while intending to misappropriate her monetary contributions. *Id.* at pp. 13-14. **Count VIII** alleges that Kruse engaged in fraud in connection with the purchase and sale of securities—in the form of the Company's membership interest—in violation of § 10(b) of the Exchange Act and Rule 10b–5. *Id.* at pp. 14-16. **Count IX** alleges that Kruse violated the Florida Securities and Investor Protection

---

[3] Kruse was named Director of Education and Arviv was named Clinical Director. [Doc. 14-1 at p. 6].

Act in connection with the purchase and sale of securities by misrepresenting—among other things—that she would use company funds for business purposes and secure educational licensing for the Company. *Id.* at pp. 16-17.

Defendants have now moved to dismiss the Amended Complaint—Moroz separately and the remaining Defendants jointly—raising the same arguments. [Docs. 18, 21]. They argue that Plaintiff fails to state a cause of action for federal securities violation because Plaintiff cannot allege conduct in connection with the purchase or sale of a security; fails to properly allege misrepresentations, reliance, and causation in accordance with Federal Rule of Civil Procedure 9(b); fails to allege any material misrepresentation or omission made with scienter; and has not met the heightened pleading standard of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), Pub. L. No. 104–67, 109 Stat. 737. [Doc. 18 at pp. 3-11; Doc. 21 at pp. 4-11]. Defendants further argue that as the federal securities claim has not been sufficiently pleaded, the Court should decline supplemental jurisdiction over the remaining state law claims. [Doc. 18 at pp. 11-12; Doc. 21 at pp. 11-12]. And, Defendants contend that the state law claims are subject to dismissal for pleading deficiencies. [Doc. 18 at pp. 12-21; Doc. 21 at 12-14].

Contrary to Defendants' claim, Plaintiff argues that she has adequately pleaded a cognizable claim under the Federal securities' statutory framework. [Doc. 22 at p. 6]. Among other things, she argues that her joint venture arrangement with Kruse constituted an "investment contract" which is considered as a security under the Act. *Id.* at pp. 6-9. She also contends that the Eleventh Circuit Court of Appeals allows a litigant to allege scienter generally. *Id.* at p. 5. Plaintiff further contends that she has adequately pleaded each of the state law claims. *Id.* at pp. 9-17; Doc. 23 at pp. 4-6.

## II. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a pleading must include a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (internal quotation marks omitted) (quoting Fed. R. Civ. P. 8(a)(2)). Labels, conclusions and formulaic recitations of the elements of a cause of action are not sufficient. *Id*. at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Furthermore, mere naked assertions are not sufficient. *Id*. A complaint must contain sufficient factual matter, which, if accepted as true, would "state a claim to relief that is plausible on its face." *Id*. (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citation omitted). The Court, however, is not bound to accept as true a legal conclusion stated as a "factual allegation" in the complaint. *Id*.

"A court is generally limited to reviewing what is within the four corners of the complaint on a motion to dismiss." *Austin v. Modern Woodman of Am.*, 275 F. App'x 925, 926 (11th Cir. 2008) (quoting *Bickley v. Caremark RX, Inc.*, 461 F.3d 1325, 1329 n.7 (11th Cir.2006)). This includes attachments or exhibits provided with the complaint. See *Gill as Next Friend of K.C.R. v. Judd*, 941 F.3d 504, 511 (11th Cir. 2019) ("The Civil Rules provide that an attachment to a complaint generally becomes "part of the pleading for all purposes," Fed. R. Civ. P. 10(c), including for ruling on a motion to dismiss."); *Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016) (noting that attached exhibits to a complaint can be considered on a motion to dismiss). "[W]hen exhibits attached to a complaint 'contradict the general and conclusory allegations of the pleading, the exhibits govern.' " *Gill*, 941 F.3d at 514. A document outside the four corners of the complaint may still be considered if it is central to the plaintiff's claims and

is undisputed in terms of authenticity. *FindWhat Inv'r Grp. v. FindWhat.com*, 658 F.3d 1282, 1297 n.15 (11th Cir. 2011) (citing *Maxcess, Inc. v. Lucent Techs., Inc.,* 433 F.3d 1337, 1340 n. 3 (11th Cir.2005)).

### III.    DISCUSSION

As Defendants have argued that the Court should dismiss the federal securities fraud claim and decline jurisdiction over the eight state law claims, the court will first address whether Plaintiff has sufficiently pleaded a 10(b)(5) violation. To plead securities fraud in violation of Section 10(b), one must sufficiently allege the following elements: "(1) a material misrepresentation or omission; (2) made with scienter; (3) a connection with the purchase or sale of a security; (4) reliance on the misstatement or omission; (5) economic loss; and (6) a causal connection between the material misrepresentation or omission and the loss...." *Brophy v. Jiangbo Pharm., Inc.*, 781 F.3d 1296, 1301–02 (11th Cir. 2015) (quoting *Mizzaro v. Home Depot, Inc.,* 544 F.3d 1230, 1236–37 (11th Cir.2008)). Defendants argue that the Amended Complaint, Count VIII, fails at this threshold juncture as there is no security involved. The Court agrees.

#### a.    <u>Sufficiency of the Federal Securities Fraud Claim</u>

The starting point of the Court's analysis is the definition of a security. The Securities Act of 1933, 15 U.S.C. § 77b(a)(1), and the Securities Exchange Act of 1934, 15 U.S.C. § 78c(a)(10), define a "security" broadly, including "any note, stock . . . evidence of indebtedness, certificate of interest or participation in any profit-sharing agreement . . . investment contract . . . or, in general, any interest or instrument commonly known as a 'security.' " Plaintiff argues that the agreement with Kruse constitutes an investment contract. [Doc. 22 at pp. 6-9].

While neither of the statutes define an "investment contract," the Supreme Court in *WJ Howey Co.* stated that "[a]n investment contract for purposes of the Securities Act means a

contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party ...." *S.E.C. v. Mut. Benefits Corp.*, 408 F.3d 737, 742 (11th Cir. 2005) (quoting *SEC v. WJ Howey Co.*, 328 U.S. 293, 298-99 (1946)). "The three elements of the test are: '(1) an investment of money, (2) a common enterprise, and (3) the expectation of profits to be derived solely from the efforts of others.' " *Alunni v. Dev. Res. Grp., LLC*, 445 F. App'x 288, 295 (11th Cir. 2011) (*quoting SEC v. Unique Fin. Concepts, Inc.,* 196 F.3d 1195, 1199 (11th Cir.1999)). The first element is not at issue in this case. The second element, a common enterprise, "exists where the fortunes of the investor are interwoven with and dependent upon the efforts and success of those seeking the investment or of third parties." *Id.* (quoting *Eberhardt v. Waters,* 901 F.2d 1578, 1580 (11th Cir.1990) (quotation omitted)). As to the third element, expectation of profits, the Eleventh Circuit has instructed as follows:

> "Although the [Supreme] Court used the word 'solely' in the *Howey* decision, it should not be interpreted in the most literal sense." *Williamson v. Tucker,* 645 F.2d 404, 418 (5th Cir.1981). Instead the test is " 'whether the efforts made by those other than the investor are the undeniably significant ones, those essential managerial efforts which affect the failure or success of the enterprise.' " *Id.* (quoting *SEC v. Glenn W. Turner Enters.,* 474 F.2d 476, 482 (9th Cir.1973)). "An interest thus does not fall outside the definition of investment contract merely because the purchaser has some nominal involvement with the operation of the business. Rather, the focus is on the dependency of the investor on the entrepreneurial or managerial skills of a promoter or other third party." *Merchant Capital,* 483 F.3d at 755 (quotation marks omitted). "An investor who has the ability to control the profitability of his investment, either by his own efforts or by majority vote in a group venture, is not dependant upon the managerial skill of others." *Gordon v. Terry,* 684 F.2d 736, 741 (11th Cir.1982).
>
> "Under the precedent of this circuit, the crucial inquiry is the amount of control that the investors retain under their written agreements." *Albanese v. Fla. Nat. Bank of Orlando,* 823 F.2d 408, 410 (11th Cir.1987). But "*Williamson v. Tucker*... articulates a

9

> narrow exception to the general rule" that an investment contract does not exist where "[t]he written agreements ... place control over all significant decisions in the hands of the investors." *Gordon,* 684 F.2d at 741. "[U]nder certain circumstances an investor may be incapable of exercising a power given by a written agreement." *Id.* Thus, this Court has recognized that the third prong of the *Howey* test may be satisfied where any control apparently exercised by the investor under the terms of the agreement is merely illusory. *Albanese,* 823 F.2d at 412 ("Even if the agreements' words did grant the investors sufficient potential control [over the management of their investments] to prevent the agreements from being securities, the record demonstrates that, in fact, any such control was illusory because plaintiffs had no realistic alternative...."). So, "[c]onsistent with *Howey's* focus on substance over form, we look at all the representations made by the promoter in marketing the interests, not just at the legal agreements underlying the sale of the interest." *Merchant Capital,* 483 F.3d at 756.

*Bamert v. Pulte Home Corp.*, 445 F. App'x 256, 262–63 (11th Cir. 2011); *Unique Fin. Concepts, Inc.*, 196 F.3d at 1201 ("[T]his Court has clearly stated that 'the crucial inquiry [for the third prong] is the amount of control that the investors retain under their written agreements.' ") (quoting *Albanese,* 823 F.2d at 410).

The Amended Complaint, Count VIII, fails at this juncture as the third element of an investment contract—the expectation of profits to be derived solely from the efforts of others—has not been pleaded. Among other things, Plaintiff alleges that she "lacked the unique experience and skills that Kruse possessed for operating a beauty school" and "relied upon Kruse's representation that she would manage the day-to-day operations of the [C]ompany." [Doc. 14 ¶¶ 33, 32]. In fact, she further alleges that her investment "was not based on a desire to manage the [C]ompany;" she "would not have invested in the [C]ompany but for Kruse's representations regarding her expertise and skills in running a beauty school;" and she "was dependent on Kruse to perform significant managerial functions and exercise judgment in managing the Company." *Id.* ¶¶ 32, 34, 35, 37, 38. Her contributions were primarily in the form of capital contribution. *Id.*

¶ 39. Taking these allegations in the light most favorable to Plaintiff, it appears that the efforts of Kruse in organizing and operating the beauty school are undeniably the significant ones, which affect the failure or success of the enterprise.

However, when the Court considers the Amended Complaint as a whole, including the exhibits, it is apparent that Plaintiff was actively involved in the affairs of the Company and did not relinquish control to Kruse. The documents attached to the Amended Complaint reflect that Plaintiff was named initial manager and had an 80% ownership interest in the Company.[4] [Doc. 14-1 at pp. 3, 6]. Pursuant to the Term Sheet, the consent of a majority of members was required for normal decisions, which included managing the day to day operations of the Company and investing Company funds. *Id.* at p. 7. This necessarily required Plaintiff's input on normal decisions. The level of control retained by Plaintiff and inherent in her 80% ownership stake in the Company defeats her claim that she had an expectation of profits to be derived solely from the efforts of Kruse. "The fact that the investor has delegated management duties or has chosen to rely on some other party does not establish dependency." *Alunni*, 445 F. App'x at 296 (quoting *Gordon,* 684 F.2d at 741-42). "An investor who has the ability to control the profitability of his investment either by his own efforts *or by majority vote in a group venture*, is not depend[e]nt upon the managerial skill of others." *Bamert*, 445 F. App'x at 262 (emphasis added). *See also S.E.C. v. ETS Payphones, Inc.*, 408 F.3d 727, 732 (11th Cir. 2005) ("The more control investors retain, the less likely it becomes that the contract qualifies as a security.").

Moreover, the control retained by Plaintiff is not illusory based on the allegations presented. *Albanese,* 823 F.2d at 412. In fact, it is clear that Plaintiff maintained some managerial

---

[4] Regardless of whether the Company is member-managed or manager-managed, "[e]ach member's vote is proportionate to that member's then-current percentage or other interest in the profits of the limited liability company owned by all members." Fla. Stat. § 605.04073(1)(b), 2(c).

11

control and oversight regarding the affairs of the Company. Specifically, Plaintiff alleges that she "gave Kruse a bank debit card to use for Company operations." [Doc. 14 ¶ 46]. She "recognized that furniture receipts presented by Kruse did not match items purchased by Kruse for the Company." *Id.* ¶ 53. Based on the unauthorized purchases Plaintiff "reported the card as stolen." *Id.* ¶ 56. Eventually, Plaintiff "removed Kruse from the Company bank account and from the Company registration records with the Florida Secretary of State Division of Corporations" and "withdrew the Company's application with the Florida Department of Education citing a change of ownership." *Id.* ¶¶ 58. Additionally, the allegation that "Kruse unilaterally filed the [Company's] tax return" suggests that Plaintiff had an expectation she would have been involved in that process. *Id.* ¶ 57. Based on these allegations, it is apparent that Plaintiff was not a passive observer. She certainly had means of protecting her investment and exercised those means when she thought prudent. *Gordon*, 684 F.2d at 741. Plaintiff did not have an expectation of profits to be derived solely from the efforts of others. Accordingly, there is no merit to Plaintiff's argument that her arrangement qualifies as an investment contract. This dispute between the parties does not involve the purchase or sale of a security. Therefore, the Amended Complaint, Count VIII, is due to be dismissed as it fails to state a claim upon which relief may be granted. Given the allegations in the Amended Complaint, further amendment would be futile.

Having determined that Count VIII fails to state a claim upon which relief may be granted, the Court need not address the other deficiencies Defendants contend exist as to Count VIII.

   b. **Supplemental Jurisdiction Over State Law Claims**

Plaintiff invoked the Court's supplemental jurisdiction over the state law claims, alleging they arose out of a common nucleus of facts as the federal securities fraud claim. [Doc. 14 ¶ 12]. "[T]he policy of supplemental jurisdiction is to support the conservation of judicial energy and

12

avoid multiplicity in litigation." *Parker v. Scrap Metal Processors, Inc.*, 468 F.3d 733, 746 (11th Cir. 2006). Hence, "[t]he district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). If § 1367(c)(3) applies, the Court need not consider the other factors under subsection (c). See *Sutherland v. Glob. Equip. Co.*, 789 F. App'x 156, 162 (11th Cir. 2019) ("Because it dismissed Sutherland's federal claims and did not have diversity jurisdiction, the district court did not err in concluding that 28 U.S.C. § 1367(c)(3) applied. This finding was sufficient to allow the court to exercise its discretion without analyzing the other factors in § 1367(c).").

The Eleventh Circuit "has noted that 'if the federal claims are dismissed prior to trial, [*United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)] strongly encourages or even requires dismissal of state claims.' " *Mergens v. Dreyfoos*, 166 F.3d 1114, 1119 (11th Cir. 1999) (quoting *L.A. Draper & Son v. Wheelabrator–Frye, Inc.,* 735 F.2d 414, 428 (11th Cir.1984)). However, the decision to exercise supplemental jurisdiction is within the district court's discretion. *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004) (finding court did not abuse discretion in declining to exercise jurisdiction over the remaining claims following dismissal of a claim for extortion under the federal RICO statutes). Additionally, "[w]hen a court decides not to exercise supplemental jurisdiction under § 1367(c)(3) because only state claims remain, the proper action is a dismissal without prejudice so that the complaining party may pursue the claim in state court." *Ingram v. Sch. Bd. of Miami-Dade Cty.*, 167 F. App'x 107, 109 (11th Cir. 2006).

The Court will decline supplemental jurisdiction over Plaintiff's eight state law claims, pursuant to § 1367(c)(3), because it has dismissed the federal securities law claim, which is the

sole claim over which it has original jurisdiction. Plaintiff is not without an opportunity to litigate those claims in state court. *See* 28 U.S.C. § 1367(d) ("The period of limitations for any claim asserted under subsection (a), and for any other claim in the same action that is voluntarily dismissed at the same time as or after the dismissal of the claim under subsection (a), shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period.").

Accordingly, it is hereby **ORDERED**:

1. Defendants Rita Kruse, Tali Arviv, Electrolysis Institute of Tampa, Inc., Ariv Medical Aesthetics, PLLC, and, Midtown Miami Medspa, PLLC's Motion to Dismiss Plaintiff's Amended Complaint [Doc. 18] and Defendant Sunny Moroz's Motion to Dismiss Plaintiff's Amended Complaint [Doc. 21] are **GRANTED**.

2. Count VIII of the Amended Complaint is dismissed as it fails to state a claim upon which relief can be granted.

3. The state law claims in Counts I through VII and IX are dismissed without prejudice to being refiled in an appropriate state court because the Court declines to exercise supplemental jurisdiction over them.

4. The Clerk is directed to terminate any pending motions and close this case.

**DONE** and **ORDERED** in Tampa, Florida on August 27, 2020.

*Charlene Edwards Honeywell*
Charlene Edwards Honeywell
United States District Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties